UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UFCW LOCAL 174 PENSION FUND,
*and its Trustee,*

                        Plaintiff,

    -against-

INTERNATIONAL GLATT KOSHER MEAT
PROCESSING CORP., GLOBEX KOSHER
FOODS, INC., 5600 FOOD CORP., and JOHN
DOE COMPANY,

                        Defendants.
-----------------------------------------------------------X

REPORT & RECOMMENDATION
17 CV 5790 (RJD)(LB)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 17 2018 ★
BROOKLYN OFFICE

*7/13/18 Adopted without qualification, Clerk to Enter judgment accordingly*
s/ Raymond J. Dearie

**BLOOM, United States Magistrate Judge:**

Plaintiff UFCW Local 174 Pension Fund ("the Fund"), through its Trustee, brings this action against defendants International Glatt Kosher Meat Processing Corp. ("IGK"), Globex Kosher Foods, Inc. ("Globex"), and 5600 Food Corp. ("5600"), to recover delinquent withdrawal liability contributions that IGK allegedly owes the Fund following its complete withdrawal from a Multiemployer Pension Plan ("the Plan"). Plaintiff seeks the total amount of withdrawal liability that IGK owes and statutory damages pursuant to Sections 502, 515, and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, and 1451. Despite proper service of the summons and amended complaint, defendants have failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Raymond J. Dearie referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that plaintiff's motion for a default judgment should be granted and the Court should enter a $1,603,758.82 judgment against defendant IGK. Plaintiff's motion against Globex and 5600 should be denied without prejudice.

1

## BACKGROUND

The facts are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for the purposes of deciding this motion. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment). Plaintiff is the Fund, along with its Trustee, for the Plan that was established through a series of agreements between plaintiff and multiple employers. Compl. ¶ 5. Defendant IGK was a signatory employer who made contributions to the Fund in accordance with requirements of the Plan. On June 30, 2007, the Fund experienced a mass withdrawal of all employers that contributed to the Fund, including defendant IGK, which rendered the Fund insolvent. Compl. ¶ 14. On November 2, 2007, the Fund notified IGK that as it had effected a complete withdrawal, it was responsible for withdrawal liability[1] in the amount of $692,968.00, due in eighty quarterly payments of $7,417.00.[2] Compl. ¶ 15; ECF No. 14-4. After being notified of its liability, defendant IGK made certain payments to the Fund as required under ERISA, 29 U.S.C. § 1399(c) until October 2014. Compl. ¶ 18. In November 2014, defendant defaulted and failed to cure, leaving many installments of its withdrawal liability to the Fund unpaid. Plaintiff notified defendant of its delinquency and provided an additional sixty days to cure, as required under the statute. Compl. ¶ 17. Plaintiff warned IGK that failure to remit payment would entitle plaintiff to seek immediate payment in full of IGK's outstanding withdrawal liability. 29 U.S.C. § 1399(c)(5). When IGK failed to pay, plaintiff brought the instant action to recover the withdrawal liability that defendant owed.

---

[1] "Withdrawal liability" is the amount of unfunded vested benefits that plaintiff can recover from IGK as a result of its complete withdrawal from the Fund. 29 U.S.C. § 1381(b).

[2] Plaintiff's complaint alleges that this initial letter was sent on July 1, 2009. However, the letter attached to plaintiff's motion for a default judgment, ECF No. 14-4, is dated November 2, 2007, four months after defendant's withdrawal. The Court assumes the date of the letter in plaintiff's complaint is an error.

## PROCEDURAL HISTORY

Plaintiff commenced this action against defendants on October 3, 2017. ECF No. 1. Plaintiff seeks recovery not only from defendant IGK for its unpaid withdrawal liability but also from defendants Globex and 5600, which plaintiff alleges are both IGK's "brother-sister corporations" under the "common control" of IGK's owner.[3] Compl. ¶¶ 21-28. Plaintiff served the defendants on October 5, 2017, and defendants' respective answers were due on October 26, 2017. ECF Nos. 6, 7, 8. Defendants failed to plead or otherwise defend this action and plaintiff requested a certificate of default against defendants on October 31, 2017. ECF No. 9. The Clerk of Court noted entry of default against defendants and plaintiff filed the instant motion for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 12.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment after a default has been entered against a defendant. Fed. R. Civ. P. 55(b)(2). If defendants fail to appear, or fail to move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F.Supp.2d 108, 118

---

[3] Plaintiff brought this claim against defendant John Doe as well, but requests that the claim against John Doe be dismissed without prejudice. Declaration of Michael Adler, ECF No. 13 ¶ 30. The request should be granted.

3

(E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F.Supp. 160, 162 (S.D.N.Y. 1993) (courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice.")). On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic, 109 F.3d at 108. Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (quoting Leider v. Ralfe, No. 01 Civ. 3137 (HB)(FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)). If the admitted facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic, 109 F.3d at 111).

### I. Liability

ERISA provides that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). "[T]he primary goal of the [Act] is to ensure that withdrawing employers are responsible for their fair share of inherited liabilities by mandating that 'an employer [that] withdraws from a multiemployer plan…is liable to the plan in the amount determined…to be the withdrawal liability.'" Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Company, Inc., 270 F.Supp.3d 593, 602 (E.D.N.Y. 2017) (citing ERISA § 4201(a)). Pursuant to 29 U.S.C. § 1383(a), "a complete withdrawal from a multiple employer plan occurs when an employer (1)

4

permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

Liability depends not only on the amount of outstanding withdrawal liability, but whether the Fund gave the withdrawing employer notice of the mass withdrawal and its share of withdrawal liability within the timeframe prescribed by the statute. 29 U.S.C. § 1399(b). The statute requires the first notification after withdrawal to be "as soon as practicable." 29 U.S.C. § 1399(b)(1). The withdrawn employer may seek review, identify any inaccuracy in the calculation of liability, or appeal the determination within 90 days of receiving notice. 29 U.S.C. 1399(b)(2)(A). The Fund must then review the request and issue a decision to the employer. ERISA requires the withdrawn employer to begin paying according to the schedule the Fund provides within 60 days after the demand is sent, irrespective of whether the employer seeks review or an appeal of the Fund's determination is pending. 29 U.S.C. § 1399(c)(2). Should the withdrawn employer default, the Fund may seek immediate payment of the outstanding withdrawal liability and "accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Default occurs when a withdrawn employer fails to make a payment and fails to cure that deficiency within 60 days. 29 U.S.C. § 1399(c)(5)(A).

"Generally, where a plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" Division 1181, 270 F.Supp.3d at 608 (quoting Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03 Civ. 4530 (PKC), 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004)). That is, "the plan sponsor must (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." National

Retirement Fund v. Caesars Entertainment Corp., 15 Civ. 2048 (LAK)(JLC), 2016 WL 2621068, at *4 (S.D.N.Y. May 5, 2016) (citations omitted), report and recommendation adopted, 2016 WL 6601561. IGK "ceased all covered operations under the Plan and/or permanently ceased to have an obligation to contribute to the plan." Compl. ¶ 13. On November 2, 2007, four months after the mass withdrawal, plaintiff notified defendant IGK of its share of withdrawal liability. This "demand letter" notified IGK that its withdrawal liability totaled $692,968.00, which had to be paid in eighty quarterly payments of $7,417.00. Compl. ¶ 15. The letter also notified defendant that the first payment was due sixty (60) days after the date of the demand letter on January 1, 2008.[4] After receiving notice of its initial withdrawal liability, IGK made some quarterly payments as directed. Compl. ¶ 18. On March 10, 2014, the Fund notified IGK of its final reallocation liability, totaling $1,331,950.00, to be paid in quarterly installments of $7,417.00 in perpetuity.[5] Compl. ¶ 16. In 2014, IGK defaulted on its obligation and stopped paying the Fund entirely. Id. Pursuant to the statute, the Fund notified IGK of its default, ECF No. 14-4, and IGK had sixty (60) days to cure, but failed to do so. Compl. ¶ 19. After 60 days, plaintiff sought immediate repayment of IGK's withdrawal liability in full under the statute. Compl. ¶ 17; 29 U.S.C. § 1399(c)(5).

Plaintiff has alleged sufficient facts to establish that defendant IGK is liable for the withdrawal liability apportioned by the Fund. Having determined that IGK is liable to the Fund, I next consider whether the Court should find defendants Globex and 5600 jointly and severally liable as defendant IGK's "brother-sister corporations."

---

[4] On December 20, 2007, plaintiff sent defendant a letter explaining the "three components of withdrawal liability— 1) initial withdrawal liability; 2) redetermination liability, and 3) reallocation liability." ECF No. 14-4. The December 20, 2007 letter served as notification of IGK's redetermination liability and stated that IGK's withdrawal liability remained the same ($692,968.00), but the twenty year cap for payments (e.g. eighty quarterly payments) was removed from the statute. Thus, defendants were liable to remit quarterly payments of $7,417.00 for an infinite period.
[5] "Reallocation liability" is the sum of an employer's initial withdrawal liability and the employer's pro-rated portion of assessable liability that has been adjusted to include the employer's portion of liability that the Fund has determined is unrecoverable from other employers. 29 C.F.R. § 4219.15(c)(2).

## II. Common Control

"All 'trades or businesses' under 'common control' are treated as a single employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another." UFCW Local One Pension Fund v. Enivel Properties, LLC, 791 F.3d 369, 371 (2d Cir. 2015) (quoting 29 U.S.C. § 1301(b)(1)). "[T]o impose withdrawal liability on an organization other than the one obligated to the pension fund, two conditions must be satisfied: the second organization must be (1) under common control with the obligated entity, and (2) a trade or business." Trs. of the Local 813 Pension Trust Fund v. Frank Miceli Jr. Contracting, Inc., 13-CV-198 (MKB)(JO), 2016 WL 1275041, at *3 (E.D.N.Y. Mar. 31, 2016) (citing 29 U.S.C. § 1301(b)(1)). "Common control" is established where multiple entities constitute a "'brother-sister' group of businesses, which requires that they are 'controlled by the same five or fewer persons owning at least 80% of the shares of each corporation, with at least 50% of the shareholder's ownership interests in each corporation identical." Id. (internal citations omitted).

Plaintiff alleges that Abraham Chaimovitz is the owner of IGK, the president and owner of Globex, and a corporate officer and owner of 5600. Compl. ¶¶ 24-26. Plaintiff also submits print-outs from the New York Department of State listing Abraham Chaimovitz as the Chief Executive Officer of each corporation. ECF No. 13-1. On these allegations alone, plaintiffs would like the Court to find that Globex and 5600 are under common control, as they are a brother-sister group with IGK. However, common ownership is not enough. Plaintiffs fail to allege that Chaimovitz is the *sole* owner of all three corporations, nor do plaintiffs establish that Chaimovitz owns at least 80% of the shares of each corporation and that at least 50% ownership of all three corporations is identical.[6] As plaintiff has failed to allege sufficient facts to establish that Globex and 5600

---

[6] Plaintiff references UFCW Local 50 Pension Fund et al v. International Glatt Kosher Meat Processing Corp., et al, 16-CV-6198 (SJF)(ARL), ECF No. 16 (E.D.N.Y. July 12, 2017), to support their common control argument. In that

7

constitute a brother-sister control group with IGK, I respectfully recommend that the Court should deny plaintiff's motion for a default judgment against defendants Globex and 5600.[7]

**III. Damages**

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted); See also Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.") "While the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." United Food & Commercial Workers Local 348 Pension Fund v. Franklin Poly Corp., No. 12-CV-5837 (MKB)(VMS), 2013 WL 4525658, at *6 (E.D.N.Y. Aug. 27, 2013) (internal citations and alterations omitted). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic, 109 F.3d at 111).

Pursuant to 29 U.S.C. § 1132(g)(2), the Fund is entitled to recover the entire withdrawal liability that IGK owes as calculated by the Fund pursuant to 29 U.S.C. § 1391, interest on the withdrawal liability, liquidated damages equaling the interest or twenty percent of the liability, whichever is greater, and reasonable attorney's fees and costs. In their memorandum of law,

---

case, Judge Feuerstein granted plaintiff's motion for a default judgment against defendants IGK, Globex, and 5600, and found the three defendants were jointly and severally liable for IGK's outstanding withdrawal liability. However, plaintiff has not alleged facts sufficient to establish that IGK, Globex, and 5600 constitute a brother-sister group as defined by 26 C.F.R. §§ 1.414(c)-2(c) in the instant case. On a motion for a default judgment, the Court takes the allegations in the complaint to be admitted for the purposes of liability, however, those allegations, taken as true, must be sufficient to establish liability. See Rolls-Royce, 688 F.Supp.2d at 153. It is not enough to say that the relationship was recognized in another case. If that were the standard, the Court would receive copies of orders in unrelated cases in lieu of well-pled complaints. The burden is still on plaintiff to establish liability on a motion for a default judgment.
[7] Plaintiff should be allowed to amend its complaint to plead facts related to IGK's relationship to Globex and 5600.

plaintiff requests a total of $1,603,758.82 in damages, which includes: (1) $1,295,478.00 in withdrawal liability principal; (2) $42,585.12 in interest through November 30, 2017; (3) $259,095.60 in liquidated damages; and (4) $6,600.10 in attorney's fees and costs, plus $152.94 in daily interest commencing December 1, 2017, through to the date of judgment. As proof of damages, plaintiff provides:

> i) The declaration of Glen Shaffer, ECF No. 14, the Third Party Administrator of the UFCW Local 174 Pension Fund, who is also a Certified Employee Benefit Specialist. Mr. Shaffer includes:
> a. A copy of the Plan's Amended Agreement and Restatement of Trust;
> b. A copy of the Plan's 2014 Restatement;
> c. A copy of plaintiff's initial demand letter following defendant's complete withdrawal from the Fund;
> d. A copy of the Redetermination Letter plaintiff sent to defendants on December 20, 2007;
> e. A copy of the Reallocation Liability Letter sent on June 26, 2009;
> f. A copy of the Default on Reallocation Liability Letter that was sent on November 17, 2014;
> g. A copy of the Notice of Immediate Payment Due sent on March 10, 2017; and
> h. The Plan's records of all payments received from defendant through 2014.
>
> ii) The declaration of plaintiff's counsel, Michael S. Adler, ECF No. 13, including contemporaneous billing records.

I have reviewed the governing Plan and the supporting documents. Plaintiff has submitted sufficient evidence to calculate the proper damages to be awarded on defendant IGK's default. An inquest is not necessary.

### A. Withdrawal Liability Principle

Pursuant to 29 U.S.C. § 1451(a)(1), the Fund is entitled to recover the amount of unfunded vested benefits that are "allocable" to defendant IGK following IGK's complete withdrawal from the Plan. If a withdrawn employer, previously notified of the complete withdrawal and apprised of its allocable withdrawal liability, fails to make a payment as outlined in the schedule provided by the Fund and fails to cure the nonpayment within 60 days of the payment due date, the

9

withdrawn employer is considered in default. 29 U.S.C. § 1399(c)(5)(A). Once a withdrawn employer defaults, the Fund may seek to recover the employer's amount of withdrawal liability immediately and in full. Id. The method for calculating an employer's withdrawal liability is set forth by statute, 29 U.S.C. § 1391. "[O]nce a defendant is found to have violated ERISA, the plaintiff is entitled to recover any unpaid withdrawal liability and 'such award is a mandatory remedy.'" UFCW Local 348 Pension Fund, No. 12-CV-5837 (MKB)(VMS), 2013 WL 4525658, at *6 (E.D.N.Y. Aug. 27, 2013) (citations omitted). Furthermore, "[a]ny dispute concerning the plan's assessment of liability had to be settled through arbitration, and an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." Labarbera v. United Crane and Rigging Services, Inc., Nos. 08-CV-3274 (DLI)(ALC), 08-CV-3983 (DLI)(ALC), 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) (adopting plaintiff's calculation of withdrawal liability "despite the lack of evidence regarding its calculation").

Glen Shaffer, the Fund's trustee, submits his affidavit with the instant motion, which affirms that IGK's allocable withdrawal liability principle totals $1,295,478.00 ($1,440,900.00 minus $145,422.00 in payments received).[8] ECF No. 14, ¶ 21. The record does not reflect that defendant IGK challenged plaintiff's calculation of its allocated withdrawal liability as permitted by statute. 29 U.S.C. § 1399(b)(2)(A). Moreover, plaintiff submits records demonstrating that IGK

---

[8] Plaintiff includes a chart outlining plaintiff's outstanding withdrawal liability. ECF No. 14-4, Exh. E, page 15 of 24. Plaintiff's counsel should have submitted evidence of how the Fund calculated the withdrawal liability in the instant case, and not simply the numbers. Division 1181, 270 F.Supp.3d 593 (E.D.N.Y. 2017) (See ECF No. 18, July 7, 2017 Order directing plaintiff to supplement motion for a default judgment with evidence of how plaintiff calculated the withdrawal liability allocable to defendant). It is plaintiff's burden to provide the Court sufficient proof of damages, which includes an explanation of how the damages were calculated. Nevertheless, plaintiff's letters to defendant IGK, which detail the withdrawal liability and provide notice for challenging the amount calculated, along with defendant's decision to make quarterly payments in lieu of challenging the allocable amount, are sufficient to award plaintiff the uncontested withdrawal liability sought herein.

made some payments towards its withdrawal liability between 2007 and 2014. ECF No. 14-4. Thus, even if defendants had appeared in this action, they are precluded from challenging the Fund's calculation of IGK's withdrawal liability principle because IGK did not challenge it within the prescribed timeframe under the statute. See Division 1181, 270 F.Supp.3d 614 (where an employer "failed to timely request arbitration, its ability to contest the amount of withdrawal liability due and owing is foreclosed.") Accordingly, I respectfully recommend that the Court should award plaintiff $1,295,478.00 in withdrawal liability principle.

**B. Interest**

Plaintiff is entitled to collect pre-judgment interest on the unpaid withdrawal liability. 29 U.S.C. § 1132(g)(2)(B). The ERISA provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under 26 U.S.C. § 6621." 29 U.S.C. § 1132(g). Interest on an employer's withdrawal liability "shall be charged or credited for each calendar quarter at an annual rate" as set on the fifteenth day before the calendar quarter. 29 C.F.R. 4219.32(b). The Plan states that interest rates will be determined using the "prevailing market rates for comparable obligations, in accordance with the regulations prescribed by the PBGC." Plan 2014 Restatement, ECF No. 14-3, Article XV, 15.11(b)(1). "PBGC" refers to the Pension Benefit Guaranty Corporation, which has been providing plaintiff funding since the mass withdrawal took place on June 30, 2007. Memorandum of Law, ECF No. 15. The applicable interest rates for each quarter are published on PBGC's website and all interest rates since 1980 are accessible from the same webpage.[9] Plaintiff also submits a chart of interest calculations beginning April 3, 2012 through defendant IGK's default that resulted in the entire withdrawal liability becoming due. ECF No. 13-1. A comparison

---

[9] https://www.pbgc.gov/prac/interest/oodwl

11

of the interest chart submitted and the interest rates on PBGC's website reflect that the correct interest rates were used to calculate the interest on unpaid quarterly installments, and the entire withdrawal liability since it became due in full in March 2017.

Plaintiff seeks to recover a total of $42,585.12 in interest calculated through November 30, 2017. Having reviewed the applicable regulations, the Plan, and plaintiff's chart detailing defendant's payments and default interest calculations, I find that plaintiff has correctly calculated the interest owed on defendant's withdrawal liability.[10] Accordingly, the Court should award plaintiff $42,585.12 in interest calculated through November 30, 2017.

Plaintiff also requests that the Court award daily interest, using the current 4.25% interest rate reflected on PBGC's website, from December 1, 2017 until the day the remaining withdrawal liability is paid. To find the daily interest rate that defendant will owe plaintiff for each day from December 1, 2017 until the delinquent contributions are paid, the Court multiplies the amount of unpaid contributions by the annual percentage rate (to obtain the yearly interest rate) and divides that number by 360 days as specified in 29 C.F.R. § 4219.32(c)(3). The daily interest rate for unpaid contributions to the Fund is $152.94 per day ($1,295,478.00 x .0425 / 360 = 152.938375). Accordingly, it is respectfully recommended that plaintiffs should be awarded $42,585.12 in interest, plus $152.94 each day beginning December 1, 2017, through to the date of payment.

### C. Liquidated Damages

Plaintiffs are entitled to receive liquidated damages on the unpaid withdrawal liability. 29 U.S.C. § 1132(g)(2)(C). The ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the Plan (up to 20 percent of the withdrawal liability). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). The Plan

---

[10] Again, it would have been prudent for plaintiff's counsel to submit more. In the future, counsel should submit how plaintiff calculated interest. Nevertheless, I find enough to award plaintiff interest here.

provides that it may seek to recover liquidated damages in the amount of twenty percent (20%) of the unpaid withdrawal liability in any action to enforce payment. ECF No. 14-1, Article VII, Section 9(c). Twenty percent of the withdrawal liability awarded on the instant motion ($1,295,478.00) equals $259,095.60. Accordingly, I respectfully recommend that plaintiffs should be awarded $259,095.60 in liquidated damages.

### D. Attorney's Fees

ERISA provides that a plaintiff may recover attorney's fees in any action to enforce a judgment to recover delinquent contributions. 29 U.S.C. § 1132(g)(2)(D). In the Second Circuit, the amount of attorney's fees to award a prevailing party is determined by calculating the "presumptively reasonable fee." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). To determine this fee, the Court begins by multiplying the number of hours spent on the litigation by "a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008); See also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") After determining the reasonable hourly rate, the Court multiplies that rate by the reasonable number of hours expended, to determine a presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437). A request for attorney's fees must be supported by contemporaneous time records that show "for

each attorney, the date, the hours expended, and the nature of the work done." Bd. Of Trs. Of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12-CV-399 (KAM)(RER), 2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013) (internal citation omitted).

To determine what constitutes a reasonable hourly rate, this Court looks to the hourly rates that attorneys routinely charge for comparable work in the Eastern District of New York. Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Trust, Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Fund, Scholarship v. Crops Design Corp., No. 12-CV-4218 (KAM)(RML), 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013). "The Eastern District of New York has found that reasonable hourly rates range from approximately $300 to $400 per hour for partners and $70 to $100 per hour for legal assistants." Incredible Foods Group, LLC v. Unifoods, S.A. De C.V., 14-CV-5207 (KAM)(JO), 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016) (collecting cases).

The Fund seeks attorney's fees at an hourly rate of $400 for the work performed by partners David Hock and Michael Adler, and an hourly rate of $80 for work performed by three firm paralegals. Adler Declaration, ECF No. 13 ¶ 43. Partner David Hock graduated from Washington College of Law American University in 1999 and has worked in labor and employment practice since that time. Id. ¶ 45. Hock worked as a partner at Cohen, Weiss & Simon LLP beginning in July 2012 through October 2017. Id. Partner Michael Adler graduated from George Washington University Law School in 2002 and has been working in employee benefits since 2003. Id. He is especially experienced in litigating cases to collect delinquent contributions, having worked at a firm representing labor unions and employee benefit plans before joining his current firm. Id. He is counsel of record in more than 200 cases involving ERISA claims. Id. Mr. Adler joined Cohen,

Weiss & Simon LLP in 2009. Id. Although his declaration fails to provide the date on which he became a partner, the Court takes counsel at his word that he was a partner while working on the instant action. Mr. Kramer and Mr. Collishaw have both been paralegals at Cohen, Weiss & Simon LLP for more than ten years, and routinely assist the firm's attorneys in "discovery, preparing documents, Court filings, complex spreadsheets, and presentations." Adler Declaration, ECF No. 13 ¶ 45. Ms. Gilman was a paralegal at Cohen, Weiss & Simon LLP from 2015 until 2017, when she left to attend law school. She, too, assisted attorneys and clients in "discovery, preparing documents, Court filings, complex spreadsheets, and presentations." Id. Plaintiff's counsel not only specializes in this area of the law, but both partners who worked on this case have spent their careers working in employment and labor law, and have specific experience litigating cases that involve delinquent contributions and other provisions of ERISA. I find that the hourly rates requested for the partners that worked on this case are reasonable. See Incredible Foods, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016) (finding an hourly rate of $400 for partner with many years of experience litigating employment cases to be reasonable). Furthermore, plaintiff has demonstrated that two of the three paralegals have more than ten years of experience each assisting attorneys on these types of cases, and the hourly fee requested for the paralegals' work on this case is on the lower end of what is permitted in this district. Accordingly, I find that the hourly rate requested for paralegals' work on this case is reasonable.

I turn next to the reasonableness of the hours worked. "[T]he number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." Finkel v. Metropolitan Sign & Maintenance Corp., No. 09-CV-4416 (SJ)(CLP), 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citation omitted), report and recommendation adopted, 2010 WL 3927512 (E.D.N.Y. Oct. 5, 2010). According to the invoices

attached to Adler's declaration, (ECF No. 13-1), the firm spent a total of 18.75 hours preparing and litigating this case. Mr. Hock spent 3.75 hours, Mr. Adler spent 10.25 hours, and each paralegal spent two hours or less working on this case. Adler Declaration ¶ 43. The work included drafting the complaint, conferences held among the partners and paralegals, preparation of court documents, conference calls with the Fund, and preparation of plaintiff's motion for a default judgment. ECF No. 13-1. The invoices provide clear entries listing the work done to litigate this case and reasonable hours expended per task. Accordingly, I respectfully recommend that plaintiff's counsel should be awarded $5,980.00 in attorney's fees as set forth below:

| Attorney/Paralegal | Rate | Hours | Total |
| --- | --- | --- | --- |
| D. Hock | $400/hour | 3.75 | $1,500 |
| M. Adler | $400/hour | 10.25 | $4,100 |
| E. Gilman | $80/hour | 2 | $160 |
| G. Kramer | $80/hour | 1.5 | $120 |
| S. Collishaw | $80/hour | 1.25 | $100 |
| **TOTAL** | | | **$5,980.00** |

### E. Costs

Plaintiffs seek to recover $620.10 in costs related to filing plaintiff's motion for a default judgment. Adler Declaration ¶ 46. Plaintiffs who prevail in an action under ERISA are entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12-CV-5646 (ILG)(SMG), 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08-CV-884 (RRM)(MGD), 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). Here, the costs incurred include the $400 filing fee, $202.00 in service of process costs, and $18.10 for online research. Upon review of plaintiff's counsel's billing records, the Court finds that these costs are reasonable. Therefore, plaintiff should be awarded $620.10 in costs.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiff's motion for a default judgment against IGK should be granted and plaintiff's motion for a default judgment against Globex and 5600 should be denied without prejudice. Plaintiff should be awarded a default judgment against defendant IGK in the amount of $1,603,758.82, comprised of: $1,295,478.00 in outstanding withdrawal liability; $42,585.12 in interest; $259,095.60 in liquidated damages; $5,980.00 in attorney's fees; and $620.10 in costs. Plaintiff should also be granted $152.94 in daily interest from December 1, 2017 to the date of payment. Finally, it is respectfully recommended that the Court should dismiss plaintiff's complaint against defendant John Doe without prejudice. Plaintiff is hereby ordered to serve a copy of this Report upon defendants at their last known addresses and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 152 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: May 15, 2018
       Brooklyn, New York